morning you pronounce your name morning your honor Kevin rich thank you mr. rich should we note that you were appointed under the criminal justice act yes your honor and the court wants you to know that we deeply appreciate your willingness to accept the assignment thank you your honor you may proceed may it please the court mr. McLaughlin you may want to lower that lectern just a bit because your voice is coming in hot very how's that my name is Kevin rich I represent the appellant in this matter Patrick J Kiley the constitutional right to a lawyer with undivided loyalty is even more fundamental than the constitutional guarantee of a lawyer who is competent and that's because the promise of and undermining it threatens the integrity of the system that's a core premise of this case and it's a premise that the Supreme Court recognized in the keeler v Sullivan case which lays out the standard that the court should apply here in Sullivan the Supreme Court said that if a defendant can show that his trial counsel operated under a conflict of interest and that conflict of but the representation provided by that lawyer that's enough to show a Sixth Amendment violation and that's what we have here mr. Kiley's trial counsel H Nassif Mahmoud labored under a conflict of interest that adversely affected his representation and so mr. Kiley's conviction should be reversed the conflict that mr. Mahmoud confronted at the beginning of trial derived from his connection to the Trevor Cook Ponzi scheme for which mr. Kiley was charged mr. Mahmoud faced potential criminal professional and civil liability arising out of his conduct and it's important to note that under the cases that have evaluated Sullivan in the context of attorneys personal conflict of interest they have held that it's potential liability not a lawyer's actual liability not a lawyer's guilt not a whether or not an investigation is ongoing or the lawyer has been charged it's just the potential liability that creates the conflict we cited some of these cases in our in our briefing and if we look at the levy case that was a case in which a lawyer faced several different kinds of conflict in his potent in his representation of the defendant and the look court looked at those independently one of those areas of conflict was unrelated criminal charges that lawyer had faced in that same district those had been resolved at the time of trial separate from those criminal charges the lawyer and levy faced a conflict based on his representation of a co-defendant who had fled and there was some insinuation that maybe the lawyer had some involvement with it there was no investigation by the government that that lawyer had been involved there was no charge that the lawyer had been involved but the Second slightly questionable in connection with the defendant who fled that created a conflict and in the government's response brief they pointed to levy and said well in levy that the lawyer was under a criminal investigation we don't have that here but if you look at the levy decision it made clear that it's separated out the criminal charges from the lawyers flight so that's one of the cases that now there the lawyer was awaiting sentencing right he had actually been sentenced by the time trial arrived but again the court looked at the conflict arising from the criminal charges and the conflict arising from his connection to the other defendants flight separately and it actually said that the strongest evidence of conflict in that case was the lawyers potential connection the defendants flight conduct that hadn't been proven there was no investigation no accusation that he'd done anything wrong and that's consistent with the principle that if a lawyer is afraid of criminal liability in that case the investigation was beginning or underway about assisting in the flight I don't believe you think that's wrong okay go ahead we can look beyond levy though in the ZEP case the lawyer in that case was supposedly present when his client just was alleged to have destroyed some evidence and in ZEP the court held that it was the it was the lawyers potential liability not his actual liabilities that's the only witness though right well if you in that case the lawyers the only witness well it's if you look at the facts your honor when the first agent arrived at the scene to arrest the defendant that case he heard multiple toilets flushing simultaneously in the house then later on a single toilet was heard to flush in sequence right the government agreed to a stipulation that ZEP's lawyer had not been in any of the bathrooms in the house and had not flushed any of the toilets so if ZEP's lawyer had not been in the bathroom according the government to flush any the toilets and there were toilets flushing simultaneously at minimum there had to be two people other than the lawyer in the house at that we're distant but I thought the Third Circuit said he was the only witness and that was the reason it was essential I don't believe that that's that you don't think that's the Third Circuit said that if you if a if a lawyer faces potential criminal liability non-rebuttal I can point to this specific language out of ZEP that I'm thinking of but but didn't have the only what you're telling me it don't believe it was the only what about the DC Circuit's case and I'll just pronounce a good terrorist that they found that they were not enamored of the Second Circuit's decision that you just cited well in Lopez Sierra at your honor the the attorney had been accused of money laundering and the government stated had an open investigation but that was about as far as things went and the DC Circuit determined that that was grounds to at conflict hearing to require that the defendant be informed of the potential consequences have separate conflict counsel evaluate the case and advise the defendant the government and the court and the defense attorney agreed to a stipulation that prevented the mention the defense attorney at trial and all these cases the facts may be different than the case we have here but they all stand for the principle that when a defense lawyer is afraid of liability a conflict arises what generates that fear I think is not relevant to the analysis what's important is that there's some objective facts that show that a reasonable person would be afraid of criminal liability tell us again what that specific fear was based upon in this case well so in this case we have a couple different things that would have generated that reasonably can be assumed of generated fear the first is that mr. Mahmood was the recipient of $100,000 in stolen victim funds that form the charge of a money laundering count in the bringing the indictment and bringing this county indictment the government signal that this transaction was illicit there were two people involved in the transaction Trevor cook let me interrupt you again is the facts I thought the district court here found that my mood did not know it was fraudulent when he accepted the $100,000 and thus could not be liable for money money laundering is didn't the district court find that in this case well we cited some cases in a reply brief regarding the issue of attorney self-serving denials in the under Sullivan the Second Circuit the Fourth Circuit the Fifth Circuit and the Ninth Circuit have all held that when courts look at Sullivan cases they should pay little attention and put a little weight on an attorney self-serving denial and those cases were do you believe I thought the district court made findings in this case is on those do you believe those are clearly erroneous I do your honor and I would point to the beyond the hundred thousand dollars there was a and a check from a bank in Antigua that was comprised of victim funds that mr. mock mood attempted to convert months after the curtain had been pulled that back on the fraud and at a time he at which he knew that these monies were illicit he didn't inform the court the receiver or law enforcement about the fact that he was seeking to obtain this check and have it deposited in his trust account at his at his bank in Illinois and he directed the check be sent to that bank and it was sent to that bank and he tried to put the check into his account and when the check bounced he sought substitute funds in the form of a wire transfer from the bank in Antigua if you look at the appendix page 56 it there's an email from the bank to mr. mock mood saying we can't send you these funds via wire transfer we have to send them via another substitute check that substitute check it's my understanding has never been located but by attempting to convert these funds mr. mock mood committed a crime now at his at the 2255 hearing mr. mock mood testified that he had tried to deposit these funds in his bank account to see if the check was good that lame excuse is about as credible as OJ's promise to find the real killers the idea that mr. mock mood was taking victim funds and deposited them in his bank account at a time when he knew they belonged to the receiver and ultimately to the victims of this fraud it's it's it's beyond ridiculous and so if you look at the the self-serving denial with regard to that particular event it's obvious that mr. mock mood was trying to protect his own skin now and if he's trying to do that now of course he was trying to do that back then so any findings related to the credibility of mr. mock moods testimony we would argue are are clearly erroneous and even if they can be received as credible as the second fourth fifth and ninth circuit of hell they should be given little weight even if they're received as credible when evaluating the Sullivan claim the essence of your argument throughout the trial mr. mom was primarily interested in defending himself against possible charges and everything else irrelevant to his clients cause the argument is that there was a conflict at present because of the fear of potential liability and because the jury heard evidence of mr. mock moods connection to mr. Trevor to Trevor Cooks Ponzi scheme possible conflict-free exactly exactly so he was referred to multiple times by other witnesses as a recipient of the hundred thousand dollars in laundered funds he basically conceded all the statements of his knowledge there was a conflict hearing prior to trial that discussed mr. mock moods potential conflict with regard to other witnesses that he had represented and with regard to whether or not mr. mock mood would need to testify as an essential witness in the case and the argument was made by mr. mock mood I don't need to be an essential witness the government can get the information it could for me from other people and after that conflict hearing the decision was made to go forward with mr. mock mood as trial counsel what was mr. Kylie's response to all of this if any and regarding mr. Mahoney's continued representation well the filings from the conflict hearing show that mr. Kylie was okay with mr. mock mood continue to represent him but the full contours of the conflict were not discussed there's no discussion of the attempt to convert a hundred convert 183 thousand dollars in victim funds before trial by mr. mock mood and there wasn't any discussion about the potential impact on mr. mock moods representation the jury did not learn of the hundred and eighty three thousand dollars that wasn't revealed until post-conviction when we were investigating we do some additional discovery mr. Mahoney somehow prevented them from knowing about it it was never decided and so during defended his own reputation at the expense of his client right the hundred eighty three thousand dollars was never raised by anybody obviously mr. mock mood had good good reason not to discuss the attempt to get those monies back but the jury did hear that mr. mock mood was connected not just to the hundred thousand dollars but also to another to a one of the defrauded investors named Duke Tichy who was at the center of the government's claim there's an email thread that was entered into evidences exhibit 177 at trial in which mr. Tichy was emailing mr. Kylie and asking what's the status of my investments well how much do I have what accounts are they in repeatedly and rather forcefully saying tell me what's going on with my investments mr. Kylie's response was I need to talk to mr. mock mood I need to call mr. mock mood and in one instance mr. Kylie writes back as I have been telling you I'm in I've been in conversation mr. mock mood if it's okay with you I'll continue acting as the conduit between you two there was no explanation at trial of what any of this meant so when the jury went back to the jury room with the exhibit 177 they're left with an email it's that states that mr. mock mood is the individual with implication he's the one controlling it this email thread and the collapse of mr. Tichy's investment was referred to in opening and closing mr. McLaughlin actually in his opening called this a good intent item with regard to mr. Kylie the collapse of mr. Tichy's investment well a jury hearing that is naturally going to presume if it's a good intent item for mr. Kylie it's a good intent item for mr. mock mood because he appears to be the person who's driving the decision about where to put this money is in control of information about this investment whether or not that's the case was never discussed at trial mr. mock mood did not cross-examine mr. Tichy there was no explanation offered to disabuse the jury of the obvious impression that mr. mock mood was the one in control of the investment so that on top of the hundred thousand dollars which mr. mock mood admitted accepting and there were multiple victims who testified very movingly about the damage that this had done to their lives so of course the jury is going to be looking out from the jury box and mr. mock mood listening to the person say my life savings have been stolen and the person who benefited from that is sitting at counsel table representing mr. Kylie and that was an irreversible taint that could only be alleviated by obtaining substitute trial counsel of course taking that step is something that mr. mock mood was not willing to do not willing to recommend there's no evidence that that was ever recommended to mr. Kylie but it should have been at the minimum there could have been a stipulation preventing the mention of mr. mock mood as the recipient of his funds or redacting his name from these emails that wasn't done either I see my time is up thank you thank you we'll hear from the government thank you your honor morning mr. McLaughlin you may proceed thank you may please the court mr. rich your honors I obviously I'm here for the United States but I also tried this case before judge Davis in 2012 I handled the direct appeal I handled the 2255 and the evidentiary hearing before judge Davis in connection with that matter I want to start sort of from a bird's-eye view of the legal landscape here it's mr. Kylie who bears the burden of proof here I think we all agree that Kyler versus Sullivan sets forth the standard of decision so mr. Kylie has the burden of showing that mr. Mahmood suffered from an actual conflict of interest during this trial that adversely affected his performance and so to use the parlance of mr. Kylie's own theory he had the burden of showing and has the burden of showing here that mr. Mahmood was a Trevor cook co-conspirator deeply entangled in the let's I think it's important when we say that a certain decision supplies the standard to actually think about that case Kyler versus Sullivan was a case where two lawyers represented three guys who were jointly accused of committing a murder trial number one resulted in a conviction of the first defendant and there were two acquittals that followed and defendant number one said no wait a minute here this is a conflict how can these two lawyers represent me and my two co-defendants that's an inherent conflict of interest concurrent representation and the Third Circuit said yeah that's too rich for our blood we think that's an inherent conflict that requires vacation of the Supreme Court said no that doesn't get it done potential conflicts are not enough to get a defendant out from under the prejudice prong of Strickland it has to be an actual conflict and it reversed the vaca tour on the ground that there had been no showing that there was a real divergence of interest between the interests of the lawyers and the first defendant who got convicted and this court in Edelman picked up on that standard Edelman very clearly says where it's just a potential conflict you don't get the benefit of the Kyler decision you have to show an actual conflict let me say something rather fundamental there is no case anywhere that stands for the proposition that a lawyer who is retained by a client who's been accused of making his living by fraud has an actual conflict of interest for receiving a retainer from that client there is no such case that stands for that proposition I have looked at all of these cases where actual conflicts have been found and let's take the concurrent representation cases and set them to one side for a moment they fall into three categories where there were an actual conflict has been found and this case isn't in any of the three categories first there are cases where the lawyer is the only plausible alternative perpetrator of the crime and that's ZEP in ZEP there was a point in time when the only two people in that house in the Virgin Islands let me interrupt you in which of your three categories do you have the Dewan case if I'm saying it right of our court 1994 of the Dewan case which are your three categories the Dewan case is a case where the lawyer had a concurrent conflict of interest I was setting that aside in that case the lawyer represented a guy who pled guilty to I think a burglary who said defendant number two did it with me then he brought defendant number two to trial and put the guy that pled guilty on the stand to say that guy didn't do it with me and on cross-examination the prosecutor pointed out that that lawyer representing you mr. defendant is the same guy that represented the burglar who pled guilty and said you did do it and judge Richard s Arnold late of this court said that's too rich for our blood that's an actual conflict because he's representing two different defendants in the same burglary case not sure though that at the end of that opinion that that the concurrent matters or most of what you said matters because the end ends with a credibility issue yeah where of the closing paragraphs because a lot of what you talk about the court doesn't seem to be bothered by candidly but would you comment about whether Dewan is good law and whether it controls this case and necessitates reversal the one is good law and it does not necessitate reversal in Dewan that lawyer obviously suborn perjury he took a defendant he had pled guilty who had benefited from saying the guy on trial did it with me and put him on the stand to say that guy didn't do it with me and the cross-examination made clear that that lawyer was responsible for both sets of inconsistent testimony that is a conflict and that is goes right to the lawyers credibility and derivatively to his clients credibility this case has no resemblance to that your honor here the only thing that this jury knew the only thing this jury knew was that mr. Mahmoud had received the hundred thousand dollars that's it the jury didn't know about the hundred and eighty three thousand dollar check from Antigua which by the way it wasn't sinister at all I can talk about that if you'd like it didn't know he was at the Van Dusen mansion meeting with people in connection with his representation of Kylie it didn't know anything except the receipt of the hundred thousand dollars so judge by in his dissent in in the direct appeal just was misapprehended that the jury knew certain things that it didn't know so get getting back to the cases now Dewan is a concurrent representation case the cases where the lawyers own interests conflict and where courts have said that's an actual conflict fall into three categories and one is the lawyers the only alternative perp that's up your honors there was a time where just the lawyer and the defendant were in the house flushing the toilet and the lawyer stipulated in front of the jury that it wasn't him that's a pretty rich situation it bears no resemblance to this case then there are cases where the attorney is actually under investigation and that's lapis sierra Gutierrez that's the Greig case that's Edelman in this district in this and the defendant wouldn't waive the conflict so that's the second category the third category is where the trial evidence itself shows that the lawyer was committing the crime with the defendant Fulton for example in Fulton the government witness said that lawyer was getting heroin right alongside the defendant can still up there was a stipulation that the lawyer was involved in the same insurance fraud scheme as the defendant man hauled versus read was a stolen goods case and a witness said that the lawyer was stealing goods was buying stolen goods from his client we have no quarrel with those three conflicts with those three categories of cases where lawyers own interests have been held to be an actual conflict that certainly isn't this case then your prong of Kyler even though if Kyler applies it gets mr. Kylie out from under Strickland's third category because there was there was no I'm sorry your honor I I talked over you I didn't hear I didn't hear your question go ahead I was asking why you think this isn't in the third category on the there was based on the evidence of trial yeah or even the evidence at the 2255 hearing there's no there is no evidence here that mr. Mahmoud was involved in any way with Trevor Cook's Ponzi scheme he didn't he never put on money laundering he received a hundred thousand dollars of money that judge Davis found as a fact based on his testimony mr. Mahmoud didn't know was dirty when he received it I would suggest that's a clear you know a clear issue before this court we had a 20 about the 184 was that in the trial no that we didn't that came out of the related SEC case your honor we didn't even know about that at the time of the trial and if I may talk about that what about the fact that he violated the court order on freezing he is asserted violated that order he testified it would have been far wiser if he had gone to judge Davis like Peter Wold had done to say hey you know I've got a hundred thousand dollars here can I keep it but his testimony was that I received that money in July of 2009 the freeze order came out in November of 2009 during that period of time I was working very hard on this case I had earned that money it was no longer Kylie's it had gone from being his retainer that's what he said what did I forget what a judge Davis say about that judge Davis make a finding he didn't make a finding one way or another specifically on that point but in general it's pretty clear that he credited my moods testimony throughout his 2255 appearance if he didn't make a finding on that there isn't really a on the hundred yeah yeah he did make a finding on that may I talk about adverse effect may go on to that okay so adverse effect is just as important under Kyler as an actual conflict what adverse effect can be inferred from this record mr. Mahmood defended this case from opening statement through closing argument by saying that money I got I got from Trevor cook the kingpin Kylie didn't send it to me I got it from Trevor cook the bad guy the guy everybody at the trial you know was referring to his devil spawn and it came from the currency program now if this guy were afraid for his own penal interest if you were afraid that he was going to get charged in a 1957 case if he was concerned that the money would be clawed back by the receiver if he had any pecuniary penal or reputational interest at all concern at all about his receipt of that fund those funds he would have defended this case differently his manner of defending the case was completely consistent with a complete lack of concern for his own penal interest there's simply no alternative defense strategy that's been identified here that is possibly be linked to a conflict let me go on and finish with something that I think is very important and in the background here and really not raised in the briefs there is a very powerful countervailing Sixth Amendment doctrine the doctrine of counsel of choice we raise the essential facts that underlie this appeal in front of magistrate judge keys we were thinking maybe mr. Mahmood is a necessary witness within the meaning of rule 3.7 of the Minnesota rules of professional conduct I encourage the court to look at the transcript of that wanted Mahmood as his lawyer we would just as soon have not had Mahmood as his lawyer frankly the guy was a pain in the in the rear end to deal with but mr. Kiley that was his counsel of choice for the district court under these circumstances to remove mr. Mahmood his counsel when there wasn't a shred of evidence that he helped Trevor Cook conduct this Ponzi scheme and not a was dirty when he received it would probably have been reversible as a matter of law under this court's precedent and under Supreme Court precedent now what was the name of the case from st. Louis where the court said mr. defendant you have the right to your choice whether the district court wanted to give you more time for it or not I should remember their own cases I didn't write it but I was on it but memory being what it is your honor I guess I'm not sure what case you're referring well I went to the Supreme Court and the court powerfully said when I when an unrepresented defendant makes a choice that the unrepresented defendant should have a choice of picking whatever lawyer wants may not bear directly on this but it may relate to it a little bit I what is your strongest case on that point from our court or from the US Supreme Court counsel of choice yeah I'm not sure your honor I could send the court a 28-day letter it's but this is a doctrine that cuts across a lot of six obvious that it needs no citation of authority really I quite that boldly but respectfully your honor I I wouldn't say that but I think that's actually true there there's there's a lot of case law that pits conflicts against counsel of choice many cases like that so counsel of choice is a doctrine that applies to the non-indigent defendant if you hire a lawyer you get to have almost unreviewable say over who that lawyer is going to be is the idea are they arguing that the judge Davis made an erroneous decision the first time around during the trial court during the trial I think that's what they're arguing I think they're arguing that the judge Davis was so obvious at that time or should have been obviously enough to forestall any provoked prohibit mr. Mahood for proceeding a day farther I think that's what their argument is and I'm I'm out of time may I make one closing observation mr. Kiley is in fact alleging in this court that Mahmood suffered from such a profound and constitutionally obvious conflict that he couldn't function as Sixth Amendment counsel and yet this was a years-long litigation with many experienced people magistrate keys judge Davis my colleague Tracy Purcell and I to defense lawyers representing the other two guys who had no interest in being seen with a lawyer too dirty to represent mr. Kiley nobody noticed this nobody food for thought thank you for your argument let's see mr. actually is all of his time he used all your but we'll no no we'll give you it's a criminal case and it's been our hill I was on that first case in other words a lot of facts in this case we'll give you two minutes thank you your honor I appreciate that just very briefly with regard to the food for thought that mr. McLaughlin offered if people don't notice a constitutional issue at trial that's why we are here that's why the Eighth Circuit exists to help correct problems that weren't noticed the first time around the government seems to argue that if it doesn't know about a crime existing then no conflict can exist so with regard to 183,000 nobody knew about the 183,000 that mr. Mahmoud tried to convert so there was no criminal liability if a lawyer's crime is able to go undetected that doesn't create a situation where the lawyers unconflicted with regard to the defendant they're representing as a matter of fact that enhances a conflict because there's more for the lawyer to try and protect by hiding things at trial and finally with regard to this idea of waiver mr. Kylie has the right to choose his counsel that is true but as the Lopez Sierra Gutierrez case illuminated if you're going to proceed with a lawyer who's obviously burdened by a conflict of interest involving the lawyers own criminal liability there be some knowing and detailed search of what that means for the defendant and a waiver an express waiver of that conflict otherwise the Sixth Amendment violation is not cured at what time at what point did the first trial proceedings whether before the jury or during the evidentiary hearing should have been should it have become so clear to judge Davis that he would have any sex said get the hints mr. Mahmoud you're not participating on behalf of mr. Kyler well I think that when the indictment was handed down implicating mr. Mahmoud that was the first signal but in fairness to judge Davis and mr. McLaughlin they didn't know all the facts that were relevant at the time the trial began because mr. Mahmoud was engaged in conduct they didn't know about involving the attempt to convert criminally derived proceeds without telling anybody about it so the disqualifying conflict first made its trial if at all the disqualifying conflict made its appearance as soon as mr. Mahmoud accepted $100,000 because it's our belief that the evidence shows he should have known when he got that money that it was illicit and without seeking relief from the court to keep those monies he was proceeding under a conflict at what point did the district court become aware of this fact I'm not I can't say exactly what it became over but there was a conflict hearing and indictment must have been known to the court at that time we thank both sides for the argument it's well it's a very interesting case thank you and it is now submitted and we will take it under consideration